# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

TINA R.,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C18-1041JLR

ORDER REVERSING AND REMANDING DENIAL OF BENEFITS

## I. INTRODUCTION

Plaintiff Tina R. seeks review of the denial of her application for supplemental security income and disability insurance benefits. (*See* Compl. (Dkt. # 3).) Plaintiff contends the Administrative Law Judge ("ALJ") erred by (1) failing to find her personality disorder a severe impairment at step two of the disability evaluation process, and (2) failing to properly evaluate the medical evidence. (Pl. Op. Br. at 1-2.) As discussed below, the court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

//

ORDER - 1

## II. BACKGROUND

### A. Procedural History

This is the second time this case is before the court. Plaintiff originally filed for disability benefits on February 7, 2011, alleging that her disability began on March 17, 2008. (*See* Admin. Record ("AR") (Dkt. # 7) at 89.) Her claims were denied on initial review and on reconsideration. (*Id.* at 89-162.) An ALJ conducted a hearing on December 19, 2012. (*Id.* at 54-82.) On March 6, 2013, the ALJ issued a decision denying Plaintiff benefits. (*Id.* at 26-46.) The Appeals Council denied review. (*Id.* at 8-10.)

On July 17, 2015, U.S. Magistrate Judge Mary Alice Theiler issued a report and recommendation ("R&R") reversing the ALJ's decision and remanding the matter with directions to reassess the medical evidence, the step two determination, and Plaintiff's residual functional capacity ("RFC"). (*Id.* at 1511-30.) Judge Robert Lasnik adopted the R&R on July 7, 2015. (*Id.* at 1533.)

On remand, the ALJ conducted a hearing on May 24, 2016. (*Id.* at 1428-69.) On July 25, 2016, the ALJ issued a decision again denying Plaintiff disability benefits. (*Id.* at 1395-1409.)

### B. The ALJ'S Decision

Utilizing the five-step disability evaluation process, 20 C.F.R. §§ 404.1520, 416.920, the ALJ found:

> **Step one:** Plaintiff has not engaged in substantial gainful activity since March 17, 2008, the alleged onset date. *See* 20 C.F.R. §§ 404.1571-76, 416.971-76.

**Step two:** Plaintiff has the following severe impairments: degenerative disc disease, fibromyalgia, depressive disorder, posttraumatic stress disorder ("PTSD"), and substance dependence disorder. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

**Step three:** Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.

**Residual Functional Capacity:** Plaintiff can perform unskilled light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). She can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. She can frequently balance. She can occasionally stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to extreme cold, vibration, and hazards. She can perform simple, repetitive work in a non-collaborative environment. She can have no contact with the public.

**Step four:** Plaintiff cannot perform past relevant work. *See* 20 C.F.R. §§ 404.1565, 416.965.

**Step five:** Considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. *See* 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a).

(AR at 1395-1409.) Based on these findings, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 30, 2015, through the date of the ALJ's decision. (*Id.* at 1408.)

Plaintiff filed written exceptions to the ALJ's decision with the Appeals Council. (*Id.* at 1643-51.) The Appeals Council declined jurisdiction on May 12, 2018, rendering the ALJ's decision final. (*See id.* at 1385-88.)

### III. DISCUSSION

Plaintiff bears the burden of proving she is disabled within the meaning of the Social

Security Act ("Act"). *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Pursuant to 42 U.S.C. § 405(g), the court may only set aside a denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the court is required to examine the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### A. The ALJ Did Not Harmfully Err in Finding that Plaintiff's Personality Disorder Was Not a Severe Impairment

Plaintiff argues that the ALJ erred at step two in finding that Plaintiff's personality disorder was not a severe impairment. (Pl. Op. Br. at 3-4.) The court disagrees.

The step two analysis is a gatekeeping device used to screen out weak claims. *See Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987)). At step two, the ALJ must determine if the claimant suffers from any impairments that are "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). But Plaintiff retains the burden of proof at step two, and must present evidence showing that she suffers from an

impairment that has more than a minimal effect on her work. *See Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

The ALJ found that Plaintiff suffered from severe mental impairments of depressive disorder, PTSD, and substance abuse disorder. (AR at 1398.) The ALJ found that although borderline personality disorder was "medically determinable here, . . . the above mental impairments, including substance dependence, best captures [sic] the symptoms and signs of record." (*Id.* at 1399.)

In the court's prior order, Magistrate Judge Theiler held that Plaintiff had not established personality disorder as a severe impairment. "The 'rule-out' personality disorder diagnoses from counselors Chen and Rosencrantz . . . do not suffice to establish a severe impairment." (*Id.* at 1524 n.2. (citing *Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005); *Carrasco v. Astrue*, No. ED CV 10-0043 JCG, 2011 WL 499346, at *4-5 (C.D. Cal. Feb. 8, 2011)). The court nonetheless found that "because this matter should be remanded for the reasons set forth above, the ALJ should take the opportunity to address the personality disorder diagnosis in the record." (AR at 1526.)

Plaintiff has failed to meet her burden of showing harmful error. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)). First, the ALJ found that Plaintiff had severe impairments, and thus continued with the disability evaluation. (*See* AR at 1398.) The ALJ considered all of Plaintiff's alleged mental limitations, whether due to depressive disorder, PTSD, and substance abuse disorder, or due to personality disorder at the RFC stage. (*See id.* at

ORDER - 5

1401-07.) Any error at step two was therefore harmless. *See Buck*, 869 F.3d at 1049.

Second, the ALJ evaluated the same issues in considering whether Plaintiff met a listing for her depressive disorder and PTSD[1] as she would have considered in determining whether Plaintiff met a listing for personality disorder. Personality disorder is evaluated under listing 12.08, whereas depressive disorder is evaluated under listing 12.04, and PTSD is evaluated under listing 12.15. *See* 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.00.

To be found disabled under listings 12.04, 12.08, or 12.15, a claimant must meet the criteria under paragraphs A and B, or paragraphs A and C. *Id.* To satisfy the paragraph B criteria of these three listings, Plaintiff must have at least one extreme or two marked limitations in the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.01. Listing 12.08 has no paragraph C criteria, so a claimant must satisfy paragraph B to be found disabled. *See id.*

The ALJ here analyzed whether Plaintiff met the paragraph B criteria, she just did so in the context of listings 12.04 and 12.15. (*See* AR at 1399-1401.) The paragraph B criteria for listing 12.08 are the same, so any error the ALJ committed in misidentifying

---

[1] The ALJ reported that she also considered whether Plaintiff met a listing for substance abuse disorder. (*See* AR at 1399.) Substance abuse disorders were previously evaluated under listing 12.09, but the Social Security Administration published new rules in September 2015 that eliminated that listing. *See* 20 C.F.R. Part 404, Subpart P, § 12.00. This discrepancy has no bearing on the outcome here.

ORDER - 6

Plaintiff's exact disorders was harmless. *See* 20 C.F.R. Part 404, Subpart P, App'x 1, § 12.01. The ALJ would have reached the same outcome regardless of whether she considered Plaintiff's symptoms as caused by depressive disorder and PTSD or personality disorder. The ALJ thus did not harmfully err at step two.

**B.     The ALJ Harmfully Erred in Evaluating the Medical Evidence**

Plaintiff argues that the ALJ erred in evaluating the medical evidence. (Pl. Op. Br. at 5-15.) Specifically, Plaintiff argues that the ALJ erroneously rejected the opinions of Laura Brown, Ph.D.; Cindy Chen; Kay Crampton, ARNP; Elena Rosencrantz; Sierra Swing, Psy.D.;[2] Samantha Slaughter, Psy.D.; and David Widlan, Ph.D. (*Id.*) These providers all either examined or treated Plaintiff. (*See* AR at 859, 863-68, 883-85, 966-67, 968-72, 1005-08, 1275-80, 1291-94, 1349, 1717-20, 1797-1802.)

These medical providers fall into two general categories within the social security process: The doctors (Dr. Brown, Dr. Swing, Dr. Slaughter, and Dr. Widlan); and the other medical sources (Ms. Chen, Ms. Crampton, and Ms. Rosencrantz). *See* 20 C.F.R. § 404.1502(a). To reject the opinions of the treating and examining doctors, the ALJ was required to give "specific and legitimate reasons that are supported by substantial evidence in the record." *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042). The ALJ could satisfy this requirement "by setting out a

---

[2] Plaintiff also asserts that the ALJ erroneously rejected the opinion of Grin Geiss Trusz. (*See id.* at 8.) Ms. Trusz was a student who cosigned Dr. Swing's report. (*See* AR at 966-67.) She did not issue a separate report, so the court will not separately address whether the ALJ erred in rejecting her opinions because that question is controlled by whether the ALJ erred in rejecting Dr. Swing's opinions.

ORDER - 7

detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). To reject the opinions of the other medical sources, the ALJ was only required to give germane reasons that were specific to each witness. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

The ALJ analyzed the opinions of Dr. Brown and Ms. Chen together, and the opinions of the remainder of the medical professionals together. (*See* AR at 1405-06.) The court will do the same.

1. <u>The ALJ Did Not Harmfully Err in Rejecting the Opinions of Dr. Brown and Ms. Chen</u>

Dr. Brown issued several opinions, two of which she cosigned with Ms. Chen. (*Id.* at 863-68, 968-72, 1260-63, 1275-80, 1291-94.) Dr. Brown and Ms. Chen opined that Plaintiff was markedly to severely impaired in her ability to (a) exercise judgment and make decisions, (b) perform routine tasks, (c) relate appropriately to coworkers and supervisors, (d) interact appropriately with the public, and (e) respond appropriately to and tolerate the pressures and expectations of a normal work setting. (*See id.* at 859, 866, 970-71, 1262, 1278, 1293.)

The ALJ gave Dr. Brown and Ms. Chen's opinions little weight. (*Id.* at 1405.) The ALJ determined that these opinions were unsupported by the fact that Plaintiff's contemporaneous mental exams were unremarkable and contradicted by Plaintiff's daily activities. (*Id.*)

ORDER - 8

The ALJ's first reason for rejecting Dr. Brown and Ms. Chen's opinions requires too narrow a reading of the record. An ALJ "cannot simply pick out a few isolated instances" of medical health that support her conclusion, but must consider those instances in the broader context "with an understanding of the patient's overall well-being and the nature of her symptoms." *Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016). The ALJ pointed to the mini mental status exam results from two of Dr. Brown's evaluations, which indicated that Plaintiff had intact attention and memory. (*See* AR at 886, 1283, 1405.) But Dr. Brown and Ms. Chen's opinions and Plaintiff's allegations focused on Plaintiff's inability to comply with social expectations. (*See id.* at 859, 866, 970-71, 1262, 1278, 1293.) Noting that Plaintiff had unremarkable cognitive testing results is not a specific and legitimate—or even germane—reason to reject Dr. Brown and Ms. Chen's opinions regarding Plaintiff's social limitations.

The ALJ's second reason withstands scrutiny. A material inconsistency between a doctor's opinion and a claimant's activities can furnish a specific, legitimate reason for rejecting the doctor's opinion. *See, e.g., Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's decision to discredit treating physician where his opinions were "inconsistent with the level of activity that [plaintiff] engaged in"); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding ALJ's rejection of treating physician's opinion where it was contradicted by plaintiff's daily activities). Again, Dr. Brown and Ms. Chen primarily opined that Plaintiff had significant social limitations. (*See* AR at 859, 866, 970-71, 1262, 1278, 1293.) Yet, as

the ALJ noted, Plaintiff traveled on at least three occasions, one of which was to attend a music festival. (*See id.* at 877, 948, 981, 1403, 1405.) Plaintiff taught a DBT[3] class for a period of time in 2010. (*See id.* at 746, 1143, 1403.) The ALJ reasonably interpreted these facts as contradicting Dr. Brown and Ms. Chen's opinions that Plaintiff was severely limited in her social abilities.

Although the ALJ based her rejection of Dr. Brown and Ms. Chen's opinions on one erroneous reason, she also gave one valid reason. That second reason—contradiction by Plaintiff's activities—remains valid in spite of the ALJ's inclusion of an erroneous reason—lack of support from contemporaneous exams. The ALJ's error was therefore harmless because it did not affect the ultimate nondisability determination. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (explaining that "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion'") (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).

> 2. <u>The ALJ Harmfully Erred in Rejecting the Opinions of Ms. Rosencrantz, Ms. Crampton, Dr. Swing, Dr. Slaughter, and Dr. Widlan</u>

Ms. Rosencrantz issued an opinion in September 2010. (AR at 845, 1005-08.) She opined that Plaintiff was markedly to severely impaired in the same areas about which Dr. Brown and Ms. Chen opined. (*See id.* at 1008.)

---

[3] The record does not specify what "DBT" stands for.

Dr. Swing[4] issued an opinion dated October 11, 2011. (*Id.* at 966-67.) They opined that Plaintiff had "difficulty controlling impulses and severe mood instability that has led to a history of physical altercations in public and work settings." (*Id.* at 966.) Dr. Swing opined that Plaintiff's inability to control her anger made her a danger to herself and others. (*Id.*) She further noted that "recent assessments indicate [Plaintiff] currently has a diminished capacity to concentrate, learn, interact socially and adapt to new environments and situations." (*Id.*)

Ms. Crampton treated Plaintiff for several years. (*Id.* at 1349.) In a letter dated November 26, 2012, Ms. Crampton opined that Plaintiff had marked and chronic symptoms that interfere with her ability to interact with others and maintain appropriate behavior in interpersonal situations. (*Id.*) Ms. Crampton did not believe Plaintiff could sustain full or part-time work at that time. (*Id.*)

Dr. Slaughter issued an opinion dated November 5, 2013. (*Id.* at 1717-20.) Dr. Slaughter opined that Plaintiff was severely limited in her ability to (a) adapt to changes in a routine work setting, (b) maintain appropriate behavior in a work setting, and (c) complete a normal work day and week without interruptions from her psychologically based symptoms. (*Id.* at 1719.) Dr. Slaughter opined that Plaintiff was markedly limited in her ability to (a) understand, remember, and persist in tasks by following detailed instructions, (b) perform activities within a schedule and maintain attendance, (c) perform routine tasks without special supervision, (d) be aware of normal hazards and take

---

[4] Ms. Trusz cosigned Dr. Swing's opinion. *See supra* note 2.

appropriate precautions, (e) communicate and perform effectively in a work setting, and (f) set realistic goals and plan independently. (*Id.*)

Dr. Widlan issued an opinion on November 6, 2015. (*Id.* at 1797-1802.) He opined that Plaintiff was severely limited in all areas of mental functioning. (*See id.* at 1799.)

The ALJ, addressing all of these opinions at once, gave them little weight. (*Id.* at 1406.) The ALJ reasoned that the "longitudinal record, including [the providers'] own treatment notes, more frequently than not, showed that [Plaintiff] had a cooperative, unremarkable demeanor with scant mention of cognitive deficits." (*Id.*) The ALJ further reasoned that "none [of these providers] adequately accounted for [Plaintiff's] substance dependence." (*Id.*)

Both of the ALJ's reasons fail. First, the ALJ's analysis of the longitudinal record once again reflects an overly narrow reading of the evidence. Although Plaintiff was cooperative at times, she showed severe mental conditions, including frequent suicidal ideation. (*See id.* at 503, 564, 1257.) Many of the records the ALJ cited were also from providers who were evaluating Plaintiff for conditions unrelated to her mental health. (*See id.* at 738, 1215, 1325.) And the fact that a claimant manages to be cooperative with her healthcare providers does not contradict those providers' opinions that the claimant is severely limited in her ability to interact with coworkers, supervisors, or the general public. Plaintiff's healthcare providers are professionals trained to deal with mentally and physically ill or disabled patients. Furthermore, a medical treatment relationship is

not like the relationship a worker has with her coworkers, supervisors, or the general public. The goals and nature of interacting with healthcare providers is different. The Social Security Administration's regulation concerning evidence of functioning in supportive situations is instructive here: "Your ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate your ability to complete tasks in the context of regular employment during a normal workday or work week." 20 C.F.R. 404, Subpart P, App'x 1, § 12.00(C)(6)(b) (2016). Interactions with treatment providers are likely to be "less demanding or more supportive than typical work settings" and thus do not demonstrate an ability to work with coworkers, supervisors, or the general public in a work setting. *Id.*

Second, the ALJ's determination that these providers did not adequately account for Plaintiff's substance dependence lacks sufficient basis in the record. Most of the citations the ALJ provided were to Dr. Brown's reports, which have no applicability to these providers. (*See* AR at 865, 1262, 1293.) Dr. Slaughter noted that Plaintiff was entering chemical dependency treatment. (*Id.* at 1724.) Dr. Widlan acknowledged Plaintiff's substance dependence, diagnosing Plaintiff with heroin dependence and alcohol dependence, both of which were continuous. (*Id.* at 1798.) Dr. Slaughter and Dr. Widlan nonetheless concluded that Plaintiff's impairments were not due to her substance abuse, nor would they go away if Plaintiff became sober. (*Id.* at 1800.) Thus, the ALJ's

conclusion that these providers did not adequately account for Plaintiff's substance abuse is not a specific and legitimate or germane basis to reject the providers' opinions.

The court also notes that although there may be times when an ALJ can address multiple medical opinions at once, this was not one of them. By grouping all of the medical opinions together, the ALJ failed to provide the level of specificity required for each individual opinion to support her rejection of those opinions. *Cf. Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (noting that an ALJ must do more than criticize an opinion "with boilerplate language that fails to offer a substantive basis for [the ALJ's] conclusion.") (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). It may be possible that the ALJ had legitimate reasons to reject particular providers here, but because she treated them all together, the court must address the reasons the ALJ gave in that same context. The ALJ's reasons do not withstand scrutiny as applied to all of the providers, so the court must conclude that the ALJ erred.

Unlike with Dr. Brown and Ms. Chen, the ALJ did not give any valid reasons for rejecting the opinions of Ms. Rosencrantz, Ms. Crampton, Dr. Swing, Dr. Slaughter, and Dr. Widlan. The court cannot confidently conclude that the ALJ would have reached the same nondisability determination had she properly addressed these opinions, and thus the ALJ committed harmful error. *See Molina*, 674 F.3d at 1115.

**C.   The ALJ Erred in Evaluating Plaintiff's RFC**

Plaintiff argues that the ALJ erred in her RFC determination, and consequently erred in her disability determination. (Pl. Op. Br. at 15-17.) Because the court has found

that the ALJ erred in evaluating the opinions of Ms. Rosencrantz, Ms. Crampton, Dr. Swing, Dr. Slaughter, and Dr. Widlan, the court agrees. An ALJ's RFC that does not properly account for all of the evidence is not supported by substantial evidence. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

**D.     Scope of Remand**

Plaintiff asks the court to remand for an award of benefits. (Pl. Op. Br. at 18.) Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits. *Id.* at 1045. First, the court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison*, 759 F.3d at 1020). Second, the court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted). If the first two steps are satisfied, the court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. "Even if [the court] reach[es] the third step and credits [the improperly rejected evidence] as true, it is within the court's discretion either to make a direct award of benefits or to remand for further

ORDER - 15

proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

The appropriate remedy here is to remand for further proceedings. Although the first step of the Ninth Circuit's framework has been met, the second and third have not. There are conflicts in the medical evidence that the court is not in a position to decide. *See Andrews*, 53 F.3d at 1039. For example, the consulting and examining doctors differ in their opinions as to Plaintiff's limitations. (*See* AR at 101-04, 139-41, 845, 863-68, 966-72, 1005-08, 1260-63, 1275-80, 1291-94, 1349, 1717-20, 1797-1802.) The court cannot weigh these opinions or translate these limitations into an RFC, nor can the court determine whether Plaintiff would be precluded from working based on such an RFC. Without resolution of these issues, the court cannot conclude that the ALJ would be required to find Plaintiff disabled here. *See Leon*, 880 F.3d at 1046-48 (affirming the district court's decision to remand for further proceedings, rather than to remand for the payment of benefits, where the record revealed conflicts, ambiguities, or gaps in the evidence).

On remand, the ALJ must reevaluate the opinions of Ms. Rosencrantz, Ms. Crampton, Dr. Swing, Dr. Slaughter, and Dr. Widlan. The ALJ must reassess Plaintiff's RFC and findings at steps four and five of the disability evaluation process, and conduct further proceedings as necessary to reevaluate the disability determination in light of this opinion.

//

//

## IV.     CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 29th day of March, 2019.

JAMES L. ROBART
United States District Judge